IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Cynthia Warren, individually and as personal representative of the Estate of Bobby Warren, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>3M Company f/k/a Minnesota Mining and Manufacturing, *et al.*,<br><br>    Defendants. | Civil Action No. 2:20-cv-3258-BHH<br><br>**<u>ORDER</u>** |

  This matter is before the Court upon the following motions filed by Plaintiff Cynthia Warren, individually and as personal representative of the Estate of Bobby Warren ("Plaintiff"): (1) motion to remand; (2) motion to dismiss as to Defendant ViacomCBS Inc. (f/k/a Westinghouse Electric Corporation) ("Westinghouse"); and (3) supplemental motion to remand. For the reasons set forth herein, the Court grants Plaintiff's initial motion to remand.

## **<u>BACKGROUND</u>**

  Plaintiff filed her complaint in the Charleston County Court of Common Pleas on December 7, 2018, alleging that Decedent Bobby Warren ("Decedent") contracted mesothelioma after being exposed to asbestos-containing products while working at Charleston Naval Shipyard. (ECF No. 1-2 ¶¶ 7-10.) On January 23, 2020, Plaintiff filed an amended complaint, outlining that Decedent began his apprenticeship in 1956; that Decedent began work as a Machinist in the machine shop of Shop 38 in 1960; that Decedent worked as a Machinist, Marine Journeyman from approximately 1960 to 1970;

that Decedent became a Machinist, Marine Instructor in 1970 and held that position until 1975; and that during these time periods Decedent was exposed to and inhaled asbestos-containing dust and fibers from asbestos-containing products and machinery that were manufactured and supplied by Defendants. (ECF No. 1-3 ¶¶ 43, 45.)

On April 8, 2020, Plaintiff served objections and answers to Defendants' master set of interrogatories and request for production of documents, as well as answers to Defendants' standard set of interrogatories (hereinafter referred to as "April 8 discovery answers"). (ECF Nos. 1-4 and 1-5.) Subsequently, on August 12, 2020, Plaintiff served supplemental answers to Defendants' standard set of interrogatories (hereinafter referred to as "August 12 supplemental discovery answers"). (ECF No. 1-6.)

On September 11, 2020, Defendant Westinghouse removed the action to this Court pursuant to 28 U.S.C. § 1446(a), the "federal officer removal statute," asserting that removal was timely under 28 U.S.C. § 1446(b) because the notice of removal was filed within thirty days of Plaintiff serving her August 12 supplemental discovery answers. According to Westinghouse, Plaintiff's August 12 supplemental discovery answers provided the first unequivocal notice that Plaintiff was asserting asbestos exposure from Westinghouse turbines that had been designed, manufactured, and supplied while Westinghouse was acting under the Navy's supervision and control.

On October 12, 2020, Plaintiff filed a motion to remand, asserting that Westinghouse's removal was untimely under 28 U.S.C. § 1446(b) because Westinghouse knew from the filing of the first amended complaint in January of 2020 that it was being sued for asbestos-related injuries arising from equipment it manufactured and supplied to the Navy. (ECF No. 27-1 at 6.) Plaintiff also asserts that her April 8 discovery answers

contained all of the information from which Westinghouse could ascertain removability. (*Id.* at 7.) In its motion to remand, Plaintiff also asserts that Westinghouse failed to demonstrate that Plaintiff's claims fall within the scope of the federal officer removal statute.

Westinghouse filed a response in opposition to Plaintiff's motion to remand, contending that one of more of Plaintiff's claims clearly fall within the scope of the federal officer removal statute because the design, manufacture, and supply of Westinghouse's turbines to the Navy were supervised and controlled by the Navy, and the Navy required the use of asbestos with those turbines. As to Plaintiff's timeliness argument, Westinghouse contends that "regardless of any earlier hints or clues that this case *might involve* a removable claim – Westinghouse affected removal within thirty days of its first clear and unequivocal notice that Plaintiff was, in fact, alleging asbestos exposure from Westinghouse turbines that had been custom-designed, manufactured, and supplied while Westinghouse was acting under the Navy's detailed supervision and control." (ECF No. 28 at 2 (emphasis in original).)

In reply to Westinghouse's response, Plaintiff admits that Westinghouse has established a basis for removal under the federal officer removal statute; however, Plaintiff maintains that Westinghouse's removal was untimely. No other parties responded to Plaintiff's initial motion to remand.

On December 15, 2020, Plaintiff filed a motion to dismiss the action as to Defendant Westinghouse based on a settlement between the two parties. Plaintiff also filed a supplemental motion to remand, asserting that the dismissal of Defendant Westinghouse would result in the sole arguably federal claim being dismissed, and that no other

Defendant asserted federal officer jurisdiction. (ECF No. 36 at 5.) In her supplemental motion to remand, Plaintiff repeats her assertion that remand is warranted because Westinghouse's removal was untimely.

Following the filing of Plaintiff's motion to dismiss and supplemental motion to remand, Defendant Air & Liquid Systems Corporation, sued as successor-in-interest to Buffalo Pumps ("Buffalo Pumps") and Defendant Cleaver-Brooks, Inc. ("Cleaver-Brooks") filed responses in opposition, asserting for the first time that Plaintiff's claims against them also support federal officer jurisdiction. Additionally, Buffalo Pumps asserts that admiralty jurisdiction provides an alternate basis for retaining the case. Plaintiff filed a reply to these responses, arguing that Buffalo Pumps' and Cleaver-Brooks' arguments are without merit.

## **STANDARD OF REVIEW**

Generally, a notice of removal must be filed within thirty days after the defendant receives the complaint. 28 U.S.C. § 1446(b)(1). However, this requirement only applies "where an initial pleading reveals a ground for removal." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). If the grounds for removal are not apparent from the complaint, a notice of removal may be filed within thirty days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also id.* at 162.

In determining whether removal is proper, the Fourth Circuit does not require courts to "inquire into the subjective knowledge of the defendant . . . ." *Lovern*, 121 F.3d at 162. Rather, courts may "rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the

4

grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Id.* The defendant bears the burden of establishing that removal was timely.

"When removal is based on a defendant's status as a federal officer pursuant to 28 U.S.C. § 1442, the thirty-day period is only triggered if the paper 'contains unequivocal facts that alert the defendant to a claim of federal officer jurisdiction.' " *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 845 (S.D.W. Va. 2008) (quoting *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 356, 365 (S.D.N.Y. 2005)).

## DISCUSSION

Defendant Westinghouse filed its notice of removal within thirty days of Plaintiff serving her August 12 supplemental discovery answers, asserting that the supplemental answers constitute an "other paper" from which it first ascertained it could remove this case under the federal officer removal statute. Importantly, in its notice of removal, Westinghouse admits that Plaintiff's April 8 discovery answers "identified types of equipment to which Mr. Warren was allegedly exposed and a group of defendants who could potentially be liable for such equipment." (ECF No. 1 at 3.) However, Westinghouse asserts that Plaintiff did not identify the Navy ships at issue in the April 8 discovery answers and thus Westinghouse could not investigate what equipment it may have supplied to the Navy for use on those ships. (*Id.*) According to Westinghouse, Plaintiff's August 12 supplemental discovery answers set out for the first time "facts from which Westinghouse could ascertain removability of this case, including a list of Navy vessels on which Mr. Warren worked and specifically alleging that some of his exposure to asbestos arose from his work on or around Westinghouse propulsion turbines, auxiliary turbines, and/or turbine-

driven equipment installed aboard those Navy vessels." (*Id.*)

In Plaintiff's motion to remand, she asserts that her amended complaint identified some of the equipment on which Decedent worked, including "valves, pumps, turbines, compressors, etc." (ECF No. 27-1 at 2.)  More specifically, according to Plaintiff, her amended complaint "made clear that every ship Mr. Warren ever worked on was a U.S. Navy ship," and it "clearly alleged that Mr. Warren worked as a marine machinist at Charleston Naval Shipyard, that he performed and supervised the disassembly and overhaul of ship machinery, such as valves, pumps, turbines, and compressors," and "was exposed to asbestos from 'machinery which were manufactured, fabricated, supplied, specified, required for use, required for replacement, sold, distributed, installed, serviced, maintained, repaired, and/or used by Defendants.'"  (*Id.* at 5-6 (emphasis in original omitted).)  Thus, Plaintiff asserts that Westinghouse knew from the filing of Plaintiff's amended complaint in January of 2020 that it was being sued for asbestos-related injuries arising from equipment that it manufactured and supplied to the Navy.

Plaintiff further asserts that Westinghouse knew from the serving of her April 8 discovery answers that it was being sued for asbestos-related injuries arising from equipment that it manufactured and supplied to the Navy.  Plaintiff points out that Westinghouse admits that the April 8 discovery answers "identified the types of equipment to which Mr. Warren was allegedly exposed." (*Id.* at 6 (quoting ECF No. 1 at 3.)  And Plaintiff points out that her April 8 discovery answers specifically referred to Decedent's attached employment records from Charleston Naval Shipyard, which "revealed specific Navy vessels on which he worked."  (ECF No. 27-1 at 3.)  According to Plaintiff, these records identified ten Naval vessels upon which Decedent worked, thereby contradicting

6

Westinghouse's assertion in its notice of removal that Plaintiff's April 8 discovery answers did not identify any Naval vessels upon which Decedent worked.

In response to Plaintiff's motion to remand, Westinghouse admits that Plaintiff's amended complaint "asserted that Mr. Warren had worked in Shop 38 at CNS from 1956 through 1990, and further alleged that Mr. Warren had 'performed and supervised the disassembly and overhaul of ship machinery such as valves, pumps, turbines, compressors, etc.'" (ECF No. 28 at 7-8 (quoting ECF No. 1-1 at 509.)  However, Westinghouse asserts that Plaintiff's amended complaint "failed to specifically identify any particular Westinghouse product that was alleged to have exposed Mr. Warren to asbestos." (*Id.* (emphasis in original omitted).)  Additionally, Westinghouse asserts that Plaintiff's April 8 discovery answers "contained no further details of Mr. Warren's alleged asbestos exposure, Westinghouse-related or otherwise." (*Id.*) According to Westinghouse, Plaintiff "failed to specify what type(s) of Westinghouse equipment or product(s) had exposed Mr. Warren to asbestos." (*Id.* at 9 (emphasis in original omitted).)  Westinghouse asserts that it was not until Plaintiff served her August 12 supplemental discovery answers that she "specifically named for the first time Westinghouse turbines as an alleged source of Mr. Warren's asbestos exposure." (ECF No. 28 (emphasis in original omitted).)

In reply, Plaintiff argues that Westinghouse is changing its tune because instead of asserting that Plaintiff's April 8 discovery answers fail to identify any Naval ships upon which Decedent worked (as alleged in the notice of removal), Westinghouse now asserts that prior to her August 12 supplemental discovery answers Plaintiff did not identify any specific Westinghouse products to which Decedent was exposed.  Regardless, Plaintiff asserts that Westinghouse's argument lacks merit because her April 8 discovery answers

7

specifically assert that Decedent was exposed to asbestos from "thermal insulation, gaskets, and packing used on the marine equipment he worked on throughout his career, including but not limited to: turbines, reduction gears, boilers, pumps, and valves, which were manufactured by . . . Westinghouse . . . and others." (ECF No. 1-5 at 4.) Plaintiff also asserts that Westinghouse's reliance on *Andrews v. 3M Co., et al.* is misplaced for two reasons: (1) because the complaint in *Andrews* alleged that the plaintiff was exposed to asbestos at Charleston Naval Shipyard *and other places*, whereas the complaint in this case only alleges exposure at Charleston Naval Shipyard, and (2) because in *Andrews* the defendants did not learn until the plaintiff's deposition which products the plaintiff was exposed to, whereas here, Westinghouse acknowledged in its notice of removal that Plaintiff's April 8 discovery answers identify certain types of equipment to which Decedent was exposed.  *See* No. 2:13-cv-2055-RMG, 2014 WL 12615710 (D.S.C. Feb. 6, 2004).

After a thorough review of the record and the applicable law, the Court agrees with Plaintiff that Westinghouse's removal was untimely under the circumstances.  First, as Plaintiff points out in her motion and her reply, the amended complaint, which was filed in January of 2020, alleges that Decedent was working at the Charleston Naval Shipyard at all relevant times and that he "performed and supervised the disassembly and overhaul of ship machinery, such as valves, pumps, turbines, compressors, etc." (ECF No. 1-3 ¶¶ 42-43.)  Plaintiff's amended complaint further alleges that during Decedent's time working at Charleston Naval Shipyard he was exposed to asbestos-containing products and machinery that was manufactured and supplied by Defendants, including Westinghouse. (*Id.* ¶ 45.)  Unlike in *Andrews*, there is no allegation that Decedent was exposed to asbestos somewhere other than while working on Navy vessels at Charleston Naval

Shipyard. *See* 201 WL 12615710, *2, n. 2. Thus, it appears that Westinghouse knew from the filing of Plaintiff's amended complaint that it was being sued for asbestos-related injuries purportedly related to equipment Westinghouse manufactured and supplied to the Navy under the Navy's direction and control.

Nevertheless, even assuming for the sake of argument that Plaintiff's amended complaint fails to contain "unequivocal facts" to alert Westinghouse to a claim of federal officer jurisdiction, unlike in *Andrews*, Plaintiff's April 8 discovery answers specifically assert that Decedent was exposed to asbestos from "thermal insulation, gaskets, and packing used on the marine equipment he worked on throughout his career, including but not limited to: turbines, reduction gears, boilers, pumps, and valves, which were manufactured by . . . Westinghouse . . . and others."  (ECF No. 1-5 at 4.)  Moreover, even Westinghouse admits in its notice of removal that Plaintiff's April 8 discovery answers "identified the types of equipment to which Mr. Warren was allegedly exposed and a group of defendants (including it) who could potentially be liable for such equipment." (ECF No. 1 at 3.) Additionally, Plaintiff's April 8 discovery answers include specific references to Decedent's employment records, which were attached and which identify various vessels upon which Decedent worked, thereby contradicting Westinghouse's assertion in its notice of removal that "without any identification as to the Navy ships at issue" it had no way "to investigate what equipment, if any, it may have supplied to the Navy for use on those ships." (ECF No. 1 at 3.) In other words, it is clear that Plaintiff's April 8 discovery answers and attached exhibits provided Westinghouse with the information it needed to investigate what equipment it may have supplied to the Navy for use on the vessels on which Decedent worked.  Thus, the Court agrees with Plaintiff that as of at least April 8, 2020,

Westinghouse had "unequivocal facts" before it to alert it of a claim of federal officer jurisdiction.  (ECF No. 1 at 3.)  Accordingly, the Court agrees with Plaintiff that Westinghouse's removal of this action on September 11, 2020, was untimely and that remand of this case is warranted.[1]

## CONCLUSION

Based on the foregoing, it is hereby ordered that Plaintiff's motion to remand (ECF No. 27) is granted because Westinghouse's removal of this action was not timely pursuant to 28 U.S.C. § 1446(b), and this matter is remanded to the Court of Common Pleas for Charleston County.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 8, 2021
Charleston, South Carolina

---

[1] Because the Court finds Westinghouse's removal untimely, the Court need not reach the arguments raised by Defendants Buffalo Pumps and Cleaver-Brooks in their responses in opposition to Plaintiff's supplemental motion to remand.  Nevertheless, the Court simply notes for practical purposes that these Defendants failed to raise the federal officer defense until four months after Westinghouse removed the case.  Moreover, neither Buffalo Pumps nor Cleaver-Brooks offer anything to demonstrate that Westinghouse's removal was timely, or that they could have timely removed the case under the federal officer removal statute on the same day that Westinghouse attempted removal.  Accordingly, the Court finds no merit to Buffalo Pumps' and Cleaver-Brooks' arguments.